# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-20516

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2025

Lyle W. Cayce
Clerk

Great Lakes Dredge & Dock Company, L.L.C.,

*Plaintiff—Appellant,*

*versus*

Chris Magnus, *Commissioner, U.S. Customs and Border Protection*;
Kristi Noem, *Secretary, U.S. Department of Homeland Security*,

*Defendants—Appellees,*

American Petroleum Institute,

*Intervenor Defendant—Appellee.*

———————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-2481

———————————————

Before Willett, Ho, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

The U.S. Customs and Border Protection agency ("CBP") issued a letter ruling to Great Lakes Dredge & Dock Company ("Great Lakes") addressing whether the Jones Act would protect Great Lakes' business from foreign competition in the offshore wind farm industry. Believing CBP

No. 23-20516

misapplied the law, Great Lakes sued in federal court to have the letter vacated. The American Petroleum Institute ("API") intervened as a defendant and moved for summary judgment on the ground that Great Lakes lacked competitor standing to challenge the letter ruling. Agreeing with API, the district court dismissed Great Lakes' suit. We affirm.

I.

Great Lakes is a dredging company that lays scour protection for offshore wind farms. "Scour protection" refers to layers of rock placed around a coastal structure's foundation to prevent erosion. Transporting and laying scour protection requires specialized vessels.

In February 2020, Great Lakes wrote CBP about a wind project off Martha's Vineyard (the "Vineyard Project") on the Outer Continental Shelf ("OCS"). Specifically, the company asked for a letter ruling on whether the Jones Act, 46 U.S.C. §§ 55101–23, would bar foreign-flag vessels from transporting scour protection rock from U.S. points to the OCS seabed. *See* 19 U.S.C. § 1625; 19 C.F.R. §§ 177.0, 177.9 (authorizing CBP ruling letters).[1]

In January 2021, CBP responded with a letter ruling. The letter explained that carrying scour protection rock from a U.S. point to the OCS was the transportation of "merchandise" between "coastwise" points that must be undertaken by Jones Act-qualified vessels. *See* 46 U.S.C. § 55102(b).[2] By contrast, carrying such rock from a foreign point (such as Canada) to the OCS was not subject to the Jones Act and so could be undertaken by foreign-flag vessels.

---

[1] CBP interprets and enforces the Jones Act's coastwise trade provisions as they apply to vessel movements. *See* 19 C.F.R. §§ 4.80 *et seq.*, 177.2(b)(2)(iv), 177.9(b)(4).

[2] Jones Act-qualified vessels must be U.S.-built, U.S.-owned-and-operated, and U.S.-registered. *Id.* §§ 55102(b)(1)–(2), 12112, 12103.

No. 23-20516

In March 2021, however, CBP issued a modified letter ruling (the "March 2021 letter"). *See* 19 C.F.R. § 177.12(b) (allowing CBP to "modify or revoke" a ruling within 60 days without notice-and-comment). The modified letter explained a Jones Act-qualified vessel was not required for the first delivery of rock to the "pristine" OCS seabed because, at that stage, "there is no coastwise point." Once that first layer was laid, though, subsequent rock transportation between a U.S. point and the OCS would require a Jones Act-qualified vessel. Great Lakes appealed the modified ruling, but CBP denied its appeal on June 6, 2022.

In July 2022, Great Lakes sued the relevant agency officials (collectively, "CBP") in the Southern District of Texas.[3] The complaint claimed the March 2021 letter was contrary to law under the Administrative Procedure Act. It also alleged Great Lakes had entered a multi-million dollar contract to build the first Jones Act-compliant subsea rock installation vessel for U.S. offshore wind projects. It further alleged the ruling would expose the vessel to "unlawful competition" under the Jones Act and the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*

API moved to intervene as a defendant, arguing that three of its member companies were involved in developing offshore wind farms. API was allowed to intervene without opposition.

Subsequently, Great Lakes, CBP, and API each moved for summary judgment. Great Lakes sought vacatur of the March 21 letter as contrary to law, while CBP argued the letter was correct given the deference afforded agencies under the APA.

---

[3] The defendants were then-CBP Commissioner Chris Magnus and then-Department of Homeland Security (DHS) Secretary Alejandro Mayorkas. Kristi Noem is now DHS Secretary.

No. 23-20516

In addition to defending the March 2021 letter, API argued Great Lakes lacked standing to challenge it. Specifically, it argued Great Lakes had no actual or imminent injury because the Vineyard Project had been completed and Great Lakes was not competing for similar projects. It also argued redressability was lacking because, among other things, nothing showed Great Lakes' competition would source scour protection from U.S. points as opposed to foreign points.

In defense of its standing, Great Lakes argued the March 2021 letter would subject its planned vessel to unlawful competition, which qualified as injury-in-fact. It argued further that it was unnecessary to wait for the increased competition to materialize before suing.

In a short ruling, the district court agreed with API and dismissed Great Lakes' complaint for lack of standing. Specifically, the court found Great Lakes' asserted injury was "hypothetical" because "the facts . . . establish that Great Lakes did not have a vessel capable of handling the [Vineyard] Project" and "it is undisputed that Great Lakes does not have a current contract to perform the Project."

Great Lakes timely appealed.

## II.

We review summary judgments *de novo*, applying the same standard as the district court. *Guerrero v. Occidental Petroleum Corp.*, 33 F.4th 730, 732 (5th Cir. 2022); *see* Fed. R. Civ. P. 56(a). We may affirm a summary judgment on any ground supported by the record and argued below. *Manuel v. Merchants and Prof. Bureau*, 956 F.3d 822, 826 (5th Cir. 2020) (citing *Salinas v. R.A. Rogers*, 952 F.3d 680, 682 (5th Cir. 2020)). Finally, we "review whether a plaintiff has Article III standing *de novo*." *La. ex rel. La. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 878 (5th Cir. 2023).

No. 23-20516

III.

On appeal, Great Lakes argues that, contrary to the district court's ruling, it can challenge the March 21 letter under the doctrine of competitor standing. Specifically, Great Lakes contends the letter injured it by wrongly exposing it to increased competition. It further argues it can sue without waiting until that competition materializes.

For its part, CBP also claims the district court erred in denying Great Lakes' standing, albeit on narrower grounds. It argues the March 21 letter applies not only to the Vineyard Project but also to projects with "identical operations." *See* 19 C.F.R. § 177.9(b)(4). And it contends that API itself identified four such projects for which both its members and Great Lakes would be competing.

"To have standing to sue in federal court, a plaintiff must show he has suffered an injury traceable to the defendant which the court's judgment would likely redress." *Deanda v. Becerra*, 96 F.4th 750, 755 (5th Cir. 2024) (citation omitted). The injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo v. Robins*, 578 U.S. 330, 339 (2016) (citation and internal quotation marks omitted).

A.

We first consider Great Lakes' broader standing argument. Great Lakes contends it was injured by the March 21 letter because it created the prospect that foreign vessels will compete against Great Lakes for offshore wind projects.

In principle, Great Lakes is correct that "[t]he regulatory allowance of increased competition in a plaintiff's market qualifies as a clear injury-in-fact." *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 738 (5th Cir. 2016) (citations and internal quotation marks omitted). Indeed, "numerous

No. 23-20516

courts have upheld the standing of competitors to challenge official actions that change the amount of competition in an economic actor's market." *Ibid.* (collecting cases).

But Great Lakes suggests it does not matter whether, as a result of the regulatory action, increased competition actually materializes. That is incorrect. "To invoke competitor standing, a plaintiff must show that the challenged government action results in '*an actual or imminent* increase in competition[.]'" *Air Excursions v. Yellen*, 66 F.4th 272, 279 (D.C. Cir. 2023) (quoting *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010)) (emphasis added).[4] It is not enough to say that lifting a regulatory barrier may potentially allow more competition down the road.[5]

The record in this case does not show, or even suggest, that the March 21 letter will cause an "actual or imminent" increase in competition to Great Lakes. Most obviously, the letter concerned the Vineyard Project—a project on which, as all seem to concede, the scour protection work has been

---

[4] We have previously drawn on D.C. Circuit precedent to elucidate competitor standing. *See Cooper*, 820 F.3d at 738 n.13 (citing, *inter alia*, *Sherley*, 610 F.3d at 72). Great Lakes itself quotes a D.C. Circuit decision for the proposition that litigants need not "wait until increased competition actually occurs" before suing. Blue Br. at 26 (quoting *La. Energy & Power Auth. v. FERC*, 141 F.3d 364, 367 (D.C. Cir. 1998); *see also Associated Gas Distribs. v. FERC*, 899 F.2d 1250, 1259 (D.C. Cir. 1990)). Later decisions have clarified, though, that, "[r]egardless how [that court] ha[s] phrased the standard in any particular case, . . . the basic requirement common to all [its competitor standing] cases is that the complainant show an actual or imminent increase in competition[.]" *Sherley*, 610 F.3d at 73; *see also, e.g.*, *Shipbuilders Council of Am. v. United States*, 868 F.2d 452, 457 (D.C. Cir. 1989) (plaintiff lacked standing to challenge a Jones Act ruling letter regarding a third party based on "highly general" "hypothesizing" about competitive harm).

[5] Great Lakes cites various cases to support its theory of competitor standing. *See Autolog Corp. v. Regan*, 731 F.2d 25 (D.C. Cir. 1984); *Nat. Credit Union Admin. v. First Nat. Bank & Trust Co.*, 522 U.S. 479 (1998); *Cooper*, 820 F.3d 730; *Hollingsworth v. Harris*, 608 F.2d 1026 (5th Cir. 1979). But none teaches that competitor injury can be established without showing increased competition is actual or imminent.

No. 23-20516

completed (and by someone other than Great Lakes). By definition, the ruling letter cannot impact Great Lakes' ability to compete for a project that has already been finished by another company.[6]

Instead of the Vineyard Project, Great Lakes focuses on the letter's supposed impact on its competition for *future* projects. But Great Lakes offers only speculation: "If . . . CBP's ruling is allowed to stand, then Great Lakes will face competition from foreign flag vessels." Yet Great Lakes cites nothing in the record to substantiate this prediction.

Consider, moreover, what "competition" means here. The March 21 letter applies the Jones Act only to rock transported to the OCS from U.S. points, not from foreign points. Yet Great Lakes points to nothing in the record suggesting its prospective competition will be sourcing U.S. rock. What's more, the record contains a July 2023 Great Lakes press release announcing it "will be developing the *first U.S. rock supply chain* for offshore wind" projects "starting in 2025" (emphasis added). None of that suggests the March 21 letter will imminently expose Great Lakes to increased competition—in fact, it suggests the opposite.

In sum, Great Lakes has not shown injury-in-fact merely because the March 21 letter may foster future competition. We agree with CBP that this theory of competitor standing "sweeps far too broadly."

## B.

CBP offers a narrower theory to salvage Great Lakes' standing. It contends the March 2021 letter also applies to "transactions involving

---

[6] The district court also found no evidence that Great Lakes had either a vessel capable of competing for the Vineyard Project or a contract to perform the project, findings Great Lakes does not contest on appeal. *See Rollins v. Home Depot USA,* 8 F.4th 393, 397 (5th Cir. 2021) (unbriefed issues are forfeited).

operations identical to those set forth in the ruling letter." *See* 19 C.F.R. § 177.9(b)(4). It claims further that API's motion to intervene identified four such projects for which its members and Great Lakes will compete. There are at least two problems with this argument, however.

First, it was not presented below. Great Lakes never defended its standing by reference to the March 21 letter's impact on projects with "identical operations."[7] And it failed to do so despite the fact that API specifically challenged Great Lakes' standing on that basis, citing § 177.9(b)(4). In other words, this alternate standing argument is making its debut on appeal. It is therefore forfeited. *See, e.g.*, *La. Dep't of Wildlife and Fisheries*, 70 F.4th at 879 (a party may "fail[] to preserve [particular] grounds for standing" by not "adequately urging them in the district court"); *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) ("Arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived.").

Second, the argument fails anyway. CBP speculates that the projects listed in API's motion feature "transactions involving operations identical to those set forth in the ruling letter." 19 C.F.R. § 177.9(b)(4). The record does not support that conclusion, however. API's motion mentioned four offshore projects in the Northeast that could be affected by the litigation. But the record says nothing about the specific "transactions" or "operations" those projects might entail.[8] More to the point, it says nothing about whether

---

[7] CBP itself presented no argument for Great Lakes' standing in the district court.

[8] CBP reads too much into API's statement that the projects involve "offshore wind farms *exactly like* the one addressed by the hypotheticals in CBP's letter." Read in context, the statement means only that the API projects, like the one in the March 21 letter, each involve "a wind farm on the outer continental shelf." In any event, the statement says nothing about the "transactions" or "operations" involved in those projects and does not suggest that their scour protection will be sourced from U.S. points.

No. 23-20516

the scour protection for those projects will be sourced from U.S. or foreign points. And, as discussed, Great Lakes' own evidence suggests there is currently *no* U.S. supply chain for scour protection rock.

In sum, we reject CBP's alternate argument that the March 21 letter injured Great Lakes by exposing it to imminent competition on projects with operations identical to those addressed in the letter.

IV.

The district court's judgment is AFFIRMED.